## PEABODY v. MARLBORO IMPLEMENT CO. (two cases).
### Nos. 6109, 6110.

United States Court of Appeals for the District of Columbia.

Argued April 4, 1934.

Decided June 11, 1934.

Leonard J. Ganse, of Washington, D. C., for appellants.

Edwin A. Swingle and Ernest A. Swingle, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

Appeals from judgments upon directed verdicts for the defendant in two related actions for damages for personal injuries arising from an automobile accident. The appellants are husband and wife and were plaintiffs below; their respective cases were consolidated for trial.

In the first case, Mrs. Peabody sued the Marlboro Implement Company, a corporation, alleging that one Howard I. Beall, while acting as agent and employee of the defendant, did operate an automobile belonging to defendant upon the streets of the city of Washington, D. C., and then and there carelessly and negligently ran into and over the plaintiff, inflicting great injuries upon her person, for which she prayed judgment in damages.

In the second case, Mr. Peabody claimed damages from the defendant as husband of the preceding plaintiff, because of the expenses incurred by him in her treatment and the loss of her services and consortium as his wife, resulting from her injuries.

The defendant, the Marlboro Implement Company, for its answer admitted the ownership of the automobile operated by Beall at the time of the accident, but denied that Beall was then operating it as the agent or employee of the defendant. The defendant also denied that the accident was caused by negligence on the part of the driver, Beall, and alleged that the plaintiff Mrs. Peabody was guilty of negligence contributing to the accident.

Testimony was introduced by the parties upon the several issues, and at the close of the case the trial justice directed a verdict for the defendant in each case in the following terms: "In this case, ladies and gentlemen of the jury, you will return a verdict for the defendant. I do not think there is any evidence to show that the driver of this car was engaged at the time in the course of his employment duties when the collision occurred. I am also inclined to think that the plaintiff herself was guilty of such contributory negligence as would bar her right to recovery. You will therefore return a verdict for the defendant. That applies to both cases." Judgment was entered for the defendant in both cases, and the present appeals were taken.

In our opinion the uncontradicted testimony contained in the record sustains the trial court's conclusion that Beall at the time of the accident was not operating the automobile as the agent or employee of the de-

fendant company, and therefore that the company was not liable in damages for the accident.

At the trial Beall testified, in substance: That the automobile he was driving at the time of the accident belonged to the defendant company and the tags upon it were in the company's name; that he kept the car when not in use at a garage upon his premises; that the agreement when he went to work for the company was that the car was to be used by him only for the company's business, but upon the occasion of the accident he was using it for his own personal business. He testified that his residence was in the city of Washington and that he was employed by the company as a collector, mostly collecting delinquent accounts in the state of Maryland; that the company had its office and store at Marlboro, Md., and had none in the District of Columbia; that he would report his collections in person to the company on Tuesdays and Fridays; that he had no particular hours of employment; that he usually got away from home about 7:30 in the morning, and returned on week days at about 6 o'clock or later in the evenings; that on Saturdays he was usually through work anywhere from noon to 4 or 5 o'clock in the afternoon; that on the Saturday of the accident he finished his work between 1 and 2 o'clock, then came into his house; that there was no more work he had to do that day for the defendant company after 1 or 2 o'clock in the afternoon; that he then washed and polished the car and after that he rode in the car to Sears, Roebuck at about 4 or 4:30 o'clock; that he went there for the purpose of purchasing some socks and neckties for himself which he did and then proceeded home; that on his way home the accident happened. The witness further testified that he did not collect any money in the District on Saturday; that he collects in the District only on special accounts which reach him by reference from Mr. Pyles, the general manager of the company; that he did not collect any special account on that Saturday either in the morning or afternoon; that he had been collecting that day in Prince Georges county, Md.; that he did not perform any service of any kind for the defendant company on that Saturday after he brought the car back to his house about 1 or 2 o'clock.

The witness W. E. Pyles testified: That he was the general manager and treasurer of the company at and before the time of the accident; that Beall was a collector for the company, and was employed for the collection of "charged off" accounts, accounts which were considered no good at the end of the year; that the company furnished him with the automobile as a means of transportation; that the automobile when not in use was kept in a garage at Beall's residence; that when witness hired Beall he gave him instructions that the car was not to be used for any other purpose than business purposes; that the company let him keep it at his home in order to save the expense of driving 20 miles to its place of business; that the territory Beall had as collector was Prince Georges county, Md.; that as an ordinary thing Beall did not collect on Saturday afternoon; that witness had not given Beall any directions either special or general to do anything for the company on the Saturday afternoon of the accident.

The witness, Dr. J. Chester Pyles, testified: That he was the president of the company; that he knows of the automobile which Beall was driving at the time of the accident; that he had told Beall on several occasions that he should use it strictly for business purposes; that Beall had never used it to witness' knowledge for any purpose except business; that it was customary for Beall "to turn the car in" at his home on Saturday afternoons some time around 1 or 2 o'clock, and what he did with the rest of his time witness did not know; that witness had not given Beall any instructions to collect any money for the company or do any work of any kind for the company on that Saturday afternoon; that the company never had any business relations with Sears, Roebuck Company.

Mrs. Beall, wife of Howard Beall, testified, in substance: That Beall came home from work on the Saturday of the accident some time between 1 and 2 o'clock; that he came in the automobile; that he washed the car and went out again, she did not know before he went where he was going; that when he came back he had a small package with him which contained some new ties and socks; that Beall did not usually work on Saturday afternoons.

No testimony was offered at the trial to contradict this evidence, nor to impeach any of these witnesses. It therefore appears that on the afternoon of the accident Beall was not operating the automobile as the agent of the company, but was operating it without the knowledge or permission of the company and for a purpose other than that for which he was employed; that his purpose in using the automobile was purely personal and wholly outside of his employment.

It is true that in Callas v. Independent Taxi Owners' Ass'n, 62 App. D. C. 212, 66 F.(2d) 192, we held that a car operated as a

taxicab at the time of an accident, bearing the peculiar colors and trade name of the defendant company, was legally presumed to be in the custody and on the business of the company whose name it bore. But in Curry v. Stevenson, 58 App. D. C. 162, 26 F.(2d) 534, we held that where the prima facie inference of possession of the automobile at the time of the accident, arising from the fact of ownership, is overcome by uncontradicted proof that in fact the automobile was not in possession of the owner or his servant or agent, the question is one for the court, and not for the jury. We think that this rule is equally applicable where the issue relates to the liability of an owner for the alleged negligence of an agent in the operation of a car.

In Fallon v. Swackhamer, 226 N. Y. 444, 123 N. E. 737, 738, the court said: "The only evidence in behalf of the plaintiff is the presumption which arises from the ownership of the car, but, as has been stated by this court, such presumption continues only so long as there is no substantial evidence to the contrary."

In Tischler v. Steinholtz, 99 N. J. Law, 149, 152, 122 A. 880, 882, the court said: "The evidence showed that the car was owned by the defendant Morris Steinholtz. Such proof of defendant's ownership of an automobile driven on a public highway raises a presumption of fact that such automobile was in the possession of the defendant, if not personally, then through his servant, the driver, and that such driver was acting within the scope of his employment. Of course both or either of these presumptions may be overcome by uncontradicted proof to the contrary; and, if so overcome by uncontradicted proof that the automobile was not in the possession of the owner or his servant, or was not being used by the servant within the scope of his employment, then a motion for a direction of a verdict for the defendant owner will be granted. If, however, the evidence is contradictory, or reasonably subject to contradictory interpretations, the question of liability is for the jury."

In view of the construction which we place upon the testimony, we reach the conclusion that inasmuch as Beall was not operating the car in the service and employment of the defendant company at the time of the accident, and that this fact appeared from the undisputed testimony in the case, it must follow that the trial court was justified in directing a verdict in favor of the defendant company.

In 2 R. C. L. 1198, it is said: "The owner of an automobile is not liable to one who is injured by the negligence of his chauffeur while operating the machine without his knowledge or permission, and for a purpose other than that for which he was employed, as where the driver is on an errand personal to himself, or is making a detour for his own purposes. * * *"

In Riley v. Roach, 168 Mich. 294, 134 N. W. 14, 18, 37 L. R. A. (N. S.) 834, it was held that the owner of an automobile, who, upon leaving home, instructs his chauffeur not to take the machine out without orders from himself or wife, is not liable for injury done by the machine while it is being used by the chauffeur contrary to the express orders given him. In this case the court quotes with approval the following extract from Ritchie v. Waller, 63 Conn. 160, 28 A. 29, 27 L. R. A. 161, 38 Am. St. Rep. 361: "For all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the service required, the instructions given, and the circumstances under which the act is done, the master is responsible."

In Tyler v. Stephan's Administratrix, 163 Ky. 770, 174 S. W. 790, it is held where a chauffeur, under general instructions to return the automobile to the garage under such circumstances, takes the owner to an entertainment at 9:30 p. m., and is directed to return for her at 12 p. m., instead of returning the automobile to the garage takes the machine without the knowledge or consent of the owner and goes on a journey exclusively his own and having no connection with the owner's business, the owner is not liable for an injury occurring on such journey.

In the case of Fleischner v. Durgin, 207 Mass. 435, 93 N. E. 801, 33 L. R. A. (N. S.) 79, 20 Ann. Cas. 1291, the chauffeur was ordered to take the automobile from the garage to a shop less than a mile distant. Instead of doing so he drove to a point six miles away to get a chain for his own use. The court, in holding the master not liable, said: "He (the chauffeur) was acting in disregard of his instructions, and wholly outside his employment, and for a purpose having no relation even remote to the business of the master. The extent of the excursion which he undertook on his own account was so disproportionate to the length of the route he was authorized to go that it cannot be minimized to a deviation." An exhaustive list of author-

ities upon this subject is contained in the court's decision.

In Cyclopedia of Automobile Law, Huddy (9th Ed.) vol. 7–8, p. 245, it is said: "It may be stated as a general rule, that, when the chauffeur or employee of the owner of a motor vehicle, or a third person not in his employ, uses the same without the consent of such owner, the owner is not liable for the negligent conduct of the driver, unless such vehicle is being used in his business. Particularly is this so when the use of the car is contrary to the express instructions of the owner, and for the pleasure or business of the chauffeur. And in such a case, it is not of controlling importance that the driver was in the general employ of the owner and had the authority to use the car at certain times or for certain purposes." This text is supported by many authorities.

In Cyclopedia of Automobile Law, Blashfield, vol. 2, p. 1369, it is said: "The test, therefore, for determining whether the owner of an automobile is liable to strangers for the wrongful and negligent acts or omissions of his servant in operating the machine is whether the servant, at the time of the accident, was engaged in furtherance of the master's business or enterprise concerning which he was employed and acting within the scope of his employment. If he was so acting, the owner will be liable for such wrongful acts or omissions, while a negative answer to such inquiry will relieve the owner from responsibility therefor." See citations.

It is plain that in the present case Beall, when he made use of the automobile for his personal convenience, was not acting in obedience to the express orders or direction of his employer, nor in the execution of his employer's business, nor within the scope of his employment, nor was his action in any sense warranted by the express or implied authority conferred upon him considering the nature of the services required, nor the instructions and circumstances under which the act was done. It follows that in this case the employer was not responsible.

This conclusion is not inconsistent with our opinion in Schweinhaut v. Flaherty, 60 App. D. C. 151, 49 F. (2d) 533, 535. In that case we said: "Hence we are of opinion that whatever may be the rule in the case of a private chauffeur who, in violation of his master's orders, takes his private automobile and uses it without the master's knowledge and for the servant's purposes alone, or, in the case of one intrusted for the moment by its

owner with an automobile for a specific purpose who, in disregard of that purpose, uses it for another, the rule in the case of one who, as a carrier of passengers for hire, places an automobile in the hands of a servant for the purpose of soliciting and obtaining fares and transporting them from one part of the city to another, and who, in such circumstances, admittedly would be liable to a pedestrian negligently injured by the servant, should reasonably be held to include liability for an injury inflicted by the negligence of the servant where that servant, in violation of the master's rules, is, as was here the case, transporting free a friend to her home near by." The present case is included in the proviso in the foregoing quotation relating to the private chauffeur "who, in violation of his master's orders, takes his private automobile and uses it without the master's knowledge and for the servant's purposes alone." It is thus implied that such a case is not within the purview of the decision. The distinction between the taxicab case and the instant case rests upon the fact that in the former at the time of the accident the chauffeur "was then in the master's employ and rightfully in possession of the cab," whereas in the present case the chauffeur was not in rightful possession of the car, but was a trespasser when he made use of the car for his own personal purposes in violation of the terms of his employment.

In the assignments of error the appellants allege that the court erred in refusing to admit testimony respecting statements made by Beall as to the character and scope of his employment; and in refusing to admit testimony respecting statements made by Dr. J. Chester Pyles, president of the defendant company, as to the character and scope of Beall's employment; and in refusing to admit testimony respecting statements made by Dr. Pyles showing the sanction and acquiescence of the company in the use of its automobile by Beall; and in refusing to permit counsel for plaintiffs to question Dr. Pyles as to statements made by him respecting the character and scope of Beall's employment and the company's sanction and acquiescence in the use of the automobile by him.

We do not find these assignments to be well taken. The court ruled that the plaintiffs below were entitled to show any admissions made by the president of the company as to the character of Beall's employment, but the court excluded proof of such admissions

made by Beall himself when tendered as evidence in chief. We think there was no error in these rulings.

The judgments of the lower court are affirmed, with costs.

HITZ, Associate Justice, took no part in the decision of these cases.