**ROSENBERG v. MURRAY et al.**

**No. 7502.**

United States Court of Appeals for the
District of Columbia.

Argued Oct. 14, 1940.

Decided Nov. 12, 1940.

Isadore H. Halpern, of Washington, D.
C., for appellant.

H. Eugene Bryan, of Washington, D.
C., for appellees.

Before GRONER, C. J., and MILLER
and RUTLEDGE, JJ.

GRONER, C. J.

In 1937 appellees were injured in an
automobile collision in Washington City.
They brought this action on the ground
that their injuries were caused by the neg-
ligence of an agent in driving a car owned
by appellant.

At the close of all the evidence ap-
pellant moved for binding instructions.
This motion was denied, and a verdict and
judgment for appellees followed. Although
appellant did not have a certificate of title,
there was, perhaps, sufficient evidence that
he owned the offending vehicle and like-
wise sufficient evidence of the driver's neg-
ligence. The only substantial question for
decision here is whether the driver was
appellant's agent. A statute in the Dis-
trict of Columbia [1] makes the owner's ex-
press or implied consent to the operation
by another of his vehicle on public high-
ways the equivalent of agency. Forrester
v. Jerman, 67 App.D.C. 167, 90 F.2d 412.
The testimony was that the car was driven
by Dyson, a laborer employed by appellant
in his junk yard on the outskirts of Wash-
ington City. At the time of the trial, Dy-
son was in jail and was not produced as
a witness, and appellees rely wholly upon
the statute, which provides that the proof

---

[1] D.C.Code 1929, Supp. V, Tit. 6, § 255b.

of ownership of the offending motor vehicle "shall be prima facie evidence that such person [the driver] operated said motor vehicle with the consent of the owner."

The effect of this provision is simply to shift the burden of proof and to impose on the defendant owner the affirmative duty of proving that the car was not at the time of the accident operated with his express or implied consent. Casey v. United States, 276 U.S. 413, 418, 48 S. Ct. 373, 72 L.Ed. 632. This presumption continues until there is credible evidence to the contrary, and ceases when there is uncontradicted proof that the automobile was not at the time being used with the owner's permission. In the case under consideration appellant testified positively and unequivocally that Dyson had taken the car without his knowledge, authority, or consent, and his uncontradicted statement to this effect, of course, overcame the statutory presumption, just as similar testimony overcomes, as we have often held, the common-law presumption that an agent is on his master's business when he drives his master's car. Curry v. Stevenson, 58 App.D.C. 162, 26 F.2d 534; Peabody v. Marlboro Implement Co., 63 App.D.C. 288, 72 F.2d 81; Simon v. City Cab Co., 64 App.D.C. 364, 78 F.2d 506. In each of these cases the positive testimony which overcame the presumption was that of the owner.

Appellees urge, however, that there were various contradictions in appellant's testimony which affect his credibility, and that in the circumstances the jury had a right to reject it. Appellant first stated that Dyson worked only week days, then corrected himself to say that Dyson did occasionally do some work in the junk yard on Sundays; also that appellant at times described himself as manager, superintendent, and owner of the yard. But we think that in neither of these respects is the contradiction sufficiently substantial to constitute self-impeachment. Nor was his testimony contradicted in any respect material to this case by any other witness. See Schmitt v. Milwaukee St. Ry. Co., 89 Wis. 195, 61 N.W. 834.

There being nothing more to consider, we are of opinion the judgment should be reversed with costs, and the case remanded for a new trial.

Reversed and remanded.

RUTLEDGE, Associate Justice (dissenting).

I think the judgment should be affirmed. I agree that there was sufficient evidence that defendant owned the offending car and that the driver was negligent. By virtue of the statute this created prima facie evidence that the driver operated the vehicle with defendant's consent, and without more was sufficient to establish defendant's liability.

However, defendant himself testified that he did not consent to Dyson's operation of the car and that Dyson was driving it wholly without authority or permission. There was no other testimony bearing directly on the issue of consent. Plaintiffs attempted to produce the driver, but through no fault of their own were unable to do so. The majority hold, in effect, that the jury were required to accept the defendant's denial. In my judgment, this invades the jury's province in passing upon his credibility.

The verdict can be sustained only upon the assumption that the jury found the defendant's testimony unworthy of belief and disregarded it entirely. Whether or not they could do this, if he had been contradicted in no material particular, need not be decided. Whether the statute be characterized as creating a "presumption" or a "prima facie case" upon proof of ownership [cf. Thomes v. Meyer Store, 1929, 268 Mass. 587, 168 N.E. 178], it has been held that even uncontradicted testimony by interested witnesses, such as defendant, is not conclusive, and may be disregarded by the jury; so that in the absence of evidence by disinterested witnesses the issue of credibility must be submitted to the jury. Glasgow v. Weldt, 1926, 218 App.Div. 749, 218 N.Y.S. 115; Steiner v. Royal Blue Cab Co., 1933, 172 Wash. 396, 20 P.2d 39; McMullen v. Warren Motor Co., 1933, 174 Wash. 454, 25 P.2d 99; cf. St. Andrassy v. Mooney, 1933, 262 N.Y. 368, 186 N.E. 867. But, assuming that the jury could not have disregarded the testimony given by the defendant merely because he was interested, if it had been contradicted in no material respect, the record shows that his testimony was directly in conflict with that given by Hayden, from whom he purchased the car, in important respects which required the jury to believe one or the other and that upon his cross-examination he was guilty of "hedging," if not of self-contradiction in other respects. The evi-

dence comes to us in narrative form, but it discloses that Hayden testified he sold the car to defendant about August 1, preceding the accident on November 21, 1937; and that he delivered the car by leaving it parked in the street in front of defendant's business premises. Defendant testified that the car was so delivered, was never removed from the street to his premises and was taken by Dyson, without authority, from the place where Hayden had parked it. Except for the date of the sale, all this might be consistent with Hayden's testimony. But defendant also testified, positively and repeatedly, that the sale took place only three or four days preceding the accident, that is, about November 17 or 18, not in late July or early August, as Hayden stated with equal assurance. If Hayden's story was true in these respects, defendant's was false. If the car was sold to him in July or early August, it is inconceivable that it could have remained parked in the street for nearly four months and likewise that Dyson could have removed it just before the accident from the place where Hayden parked it. If Hayden's version of the transaction is accepted, defendant's variations from the facts became so gross as to cast doubt upon his entire testimony, and presented for the jury a clear-cut issue of fact and of credibility. It was the jury's function to decide whether Hayden or the defendant was telling the truth and they have accepted Hayden's account. Likewise, in view of that fact they have elected to disbelieve defendant's denial that he consented to operation of the car by Dyson, who was shown to be his employee, though no affirmative proof was offered that his employment included driving of cars. The jury also may have taken into account other inconsistencies in defendant's cross-examination, which I think they were entitled to do in the light of the contradiction between Hayden and the defendant, though perhaps in the absence of this these matters might not have been sufficient to constitute impeachment. Certainly the jury had the opportunity, which we have not had, of observing the witnesses and their demeanor upon the witness stand.

I think, therefore, that the statutory "presumption" or "prima facie evidence" was not overcome as a matter of law by testimony contradicted as was that of defendant here; that it was within the jury's province to determine his credibility; and that we should not interfere with their verdict.