Argued December 9, 1941; affirmed February 10, 1942

FOGELSONG *v.* JARMAN ET AL.

(121 P. (2d) 924)

Before KELLY, Chief Justice, and BELT, BAILEY,
LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Glenn R. Jack*, of Oregon City (Butler & Jack, of Oregon City, on the brief), for appellants.

*Duane Vergeer*, of Portland (Vergeer & Samuels, of Portland, on the brief), for respondent.

KELLY, C. J. At approximately 8:20 a. m. on the 5th day of March, 1940, plaintiff was riding in an automobile being driven in an easterly direction across Pacific Highway 99E at its intersection with Hull Avenue.

Pacific Highway 99E was then and still is a public highway extending in a general northerly and southerly direction.

Hull Avenue was and is also a public highway extending in a general easterly and westerly direction and intersecting Pacific Highway 99E at approximately right angles.

As the automobile in which plaintiff was riding so being operated across said intersection, defendant Charles Homann was operating a Chevrolet automobile in a general southerly direction across said intersection and a collision of the two cars occurred.

This action was instituted to recover damages for personal injuries sustained by plaintiff as a result of said collision.

The Chevrolet car driven by defendant Homann was used in the business of defendants E. Roy Jarman and Eva Jarman.

The case was tried to a jury and a verdict rendered in favor of plaintiff against defendants in the sum of $2,500 general damages and the further sum of $300 special damages.

In appealing from the resultant judgment, defendants assign three alleged errors on the part of the trial court: First, in denying the motion of appellants Jarman, for a directed verdict; second, in admitting testimony to the effect that plaintiff had suffered a sacroiliac injury and an injury to his spinal cord; and, third, in denying defendants' motion for a mistrial because on cross-examination of defendant Homann, plaintiff's attorney asked Mr. Homann if he remembered discussing the matter at issue with a man named Hudson Church to which Mr. Homann answered, "I don't know the gentleman," whereupon, Mr. Church was caused to arise, and plaintiff's counsel asked Mr. Homann: "Do you remember Mr. Church?" To which question Mr. Homann replied: "I don't remember him. He spoke to me out in the hall and said he was a representative of the State Home Mutual, and he had spoken to me in his office." The cross-examination then continued as follows:

"Q. Do you remember going to the office?

"A. I remember going to the State Home Mutual and I spoke to several gentlemen there, but I don't remember him.

"Q. Do you remember giving some one there a written statement?"

At this point, defendants moved for a mistrial, "on the ground and for the reason that the obvious purpose of the question is an effort to introduce into the case insurance; it is prejudicial."

As stated, the trial court denied the motion and defendants' third assignment of error is based thereupon.

Treating these assignments inversely to the order in which they are stated, we think that no error was committed by the trial judge in denying defendants' motion for mistrial.

*Haltom v. Fellows*, 157 Or. 514, 73 P. 2d 680, cited by defendants, is a case where plaintiff's attorney referred to defendants as having money galore while plaintiff had none. The record was silent upon the question whether defendants themselves had invited such comment. In the case at bar, it was one of the defendants who mentioned the insurance company.

In *Ross v. Willamette Valley Transfer Co.*, 119 Or. 395, 248 P. 1088, the objectionable testimony was elicited by plaintiff's attorney on cross-examination of the driver of defendants' truck. The question was presented upon the action of the trial court in denying defendants' motion to strike such testimony out.

*Rosumny v. Marks*, 118 Or. 248, 246 P. 723, holds that persistence by counsel in continuing improper argument, with regard to liability insurance, despite a ruling by the court that he should pursue the argument no further, was in itself such gross misconduct as to constitute reversible error. The portion of the record, upon which such improper argument was based, appeared upon a page of a written report; part of other portions of which were introduced by defendant, and still other parts by plaintiff.

In *Vasquez v. Pettit*, 74 Or. 496, 145 P. 1066, Ann. Cas. 1917A, 439, the attorney for plaintiff, in examining prospective jurors on their *voir dire*, was permitted, over objection and exception, to state that the damages which their client had suffered were to be paid by money furnished by an insurance company; and on cross-examination the defendant was compelled, over objection and exception, to state that such

sum had been repaid him by an insurance company under a policy which protected his business against liability for accidents to employees. The record discloses that plaintiff was an employee of defendant. Moreover, the opinion states that "there appears to have been an intent at every convenient opportunity to establish the fact that the defendant was protected from liability to respond in damages for injuries to his employees by a policy of indemnity insurance."

■ In none of the above cases, was the defendant the one who first mentioned, or in any wise countenanced the mentioning of, insurance, insurance company, or insurance offices. In the case at bar, it was one of the defendants, who called attention to the name of an insurance company. That part of his testimony was not responsive to the question propounded to him; and the fact that defendant volunteered such statement does not disclose any wilful attempt by plaintiff to influence the jury by showing that the defendants were protected by indemnity insurance.

No error was committed in overruling defendants' motion for a mistrial.

Plaintiff's amended complaint contains the following allegation:

"That as the natural and proximate result of defendants' negligence and of the said collision, plaintiff was violently thrown about within the vehicle in which he was riding and his body came in violent contact with the interior of the said car, and he was generally wrenched, bruised and battered; and plaintiff suffered deep and painful bruises on his left side, and his sixth and seventh ribs were torn loose from plaintiff's spine; and plaintiff suffered injuries to his abdomen, bruising and injuring his left kidney and causing a constriction of plaintiff's bowel; and plaintiff suffered severe shock and damage to his nervous system; and the muscles,

tendons and ligaments of plaintiff's back were torn and wrenched.''

The question embraced within defendants' second assignment of error is whether under the above quoted allegation testimony should have been admitted tending to prove a sacroiliac injury and an injury to plaintiff's spinal cord.

■ We think that the trial court did not err in receiving such testimony. Under similar allegations, the reception of such evidence has been approved in the following cases: *Fink v. United States Rys. Co.*, (Mo. App.) 219 S. W. 679; *Gulf Research & Development Co. v. Linder*, 177 Miss. 123, 170 So. 646; *Dallas Ry. & Terminal Co. v. Helton*, (Tex Civ. App.) 145 S. W. 2d 655; *Nark v. Horton Motor Lines, Inc.*, 331 Pa. 550, 1 Atl. 2d 655; *American Fidelity & Casualty Co. v. Bennett*, 182 Okla. 71, 76 P. 2d 245; *Southern Ry. Co. v. Bottoms*, 35 Ga. App. 804, 134 S. E. 824; *Bales v. Kansas City Public Service Co.*, 328 Mo. 171, 40 S. W. 2d 665; *Rockenstein v. Rogers*, 326 Mo. 468, 31 S. W. 2d 792; *Long v. Fulkerson*, 228 Mo. App. 1230, 74 S. W. 2d 879; *Knight v. Kansas City Public Service Co.*, (Mo. App.) 49 S. W. 2d 1074; *Kline v. Byram*, 172 Minn. 284, 214 N. W. 890.

In *Fink v. United Rys. Co.*, supra, the court of appeals of Missouri said:

''As to the admission of the testimony with reference to plaintiff's taking electrical treatments of her spine, we do not think this was error. The petition alleges that the left hip and back were severely strained and wrenched, and it cannot be seriously contended that the spine is not a part of the back.''

In *Rockenstein v. Rogers*, supra, the supreme court of Missouri, Division No. 1, said:

''It is claimed by appellant that the trial court erred in permitting plaintiff's medical witnesses to

testify that plaintiff had suffered an injury to the sacroiliac joint, upon the ground that no such injury was pleaded in the petition. We have carefully examined the record and we find no such objection to have been made by defendant. So far as the record discloses, the testimony of plaintiff's medical witnesses, to the effect that plaintiff had suffered an injury to the sacroiliac joint, went in without any objection on the part of defendant. However, we think the injury was sufficiently described and pleaded in the petition which alleged that 'plaintiff's back, spine, abdomen,   *   *   * and the bones, joints, muscles, tendons, tissues, membranes, ligaments, and vessels thereof, were seriously bruised, contused, lacerated, wrenched, mashed, crushed, inflamed and infected.' It is a matter of almost common lay knowledge that the sacroiliac joint, anatomically speaking, is a part of the back.''

As stated, the first assignment of error is based upon the denial by the trial court of the motion of defendants E. Roy Jarman and Eva Jarman, for a directed verdict in their favor.

■ This assignment is based upon the principle of law that an employer is not liable for the act of an employee unless it be shown that the relationship of master and servant or principal and agent existed at the time the damage was done and that the employee was then acting within the course of his employment. Defendants Jarman urge there is no substantial testimony in the record tending to establish these facts.

A consideration of this question necessitates reference to the nature of defendant's, Homann's, duties under his contract of employment with his codefendants, Mr. and Mrs. Jarman, and to the course he was taking at the time of the collision.

From Mr. Homann's testimony it is shown that at the time of the collision he was employed by his co-

defendants as a salesman of new and used automobiles; that the Chevrolet car which he was then driving was owned by "Jarman's Incorporated"; and that in obtaining prospects and making sales he would call on people in their homes, or on the road, or wherever he happened to find them. Mr. Homann also testified that he made lots of evening calls on people at their homes with a view of making sales.

When asked how frequently he would work at night, he said:

"Whenever there was a prospect that needed working, sometimes every night, or two or three nights in succession; sometimes only once or twice a week."

He also testified that he paid his codefendants four dollars a month and they furnished a certain amount of gasoline and kept the car lubricated and in repair.

At the time of the accident in suit, defendant Homann was on his way to a sales meeting to begin at 8:30 a. m. These sales meetings were of daily occurrence.

In reference to his attendance upon such meetings, Mr. Homann was asked:

"Was that a voluntary obligation on your part, or were you directed by Jarman's to be there?"

To which he answered:

"Well, it was not one hundred per cent mandatory. If we had a prospect we was hitting, as we call it, we were excused from sales meeting, but we were expected to be there, or at least encouraged to be there."

As to the control exercised over the use of the Chevrolet car, Mr. Homann testified that he was allowed to drive it to and from his home and in work.

Mr. Homann was unable to remember whether or not on the evening before the collision in suit he made a call on a prospect or not.

We now consider cases cited by defendants in support of their first assignment of error:

*Hantke v. Harris Ice Machine Works*, 152 Or. 564, 54 P. 2d 293, cited by defendants, states the general rule that an accident does not arise in the course of employment when it occurs while the employee is on his way to work and before he has reached the premises of the employer or the place where his work is to be done. To this rule, there are exceptions which are there enumerated.

One of those exceptions is where the employee is using an automobile or other vehicle furnished by the employer.

*Bunch v. Standard Oil Co.*, 144 Or. 1, 23 P. 2d 328, is a case where the one causing the injuries to another was driving his own automobile on Sunday. The principle there announced is that where the employment was at a monthly salary for work of eight hours per day and six days a week, the wearing of the regulation uniform of employees of defendant by the driver of the car on the Sunday when the accident occurred was not sufficient to justify the submission of the case to the jury.

*Lehl v. Hull*, 152 Or. 470, 50 P. 2d 48, 54 P. 2d 290, held that the father of an adult son could not be held liable for the negligence of the son in operating the father's car without permission in making a visit to and taking a ride with the son's friends, it appearing that the father and son lived apart from each other.

*Smith v. Burns*, 71 Or. 133, 135 P. 200, 142 P. 352, Ann. Cas. 1916A, 666, 53 A. L. R. (N.S.) 1130, applies

the same principle as that announced in *Lehl v. Hull*, supra. The father was exonerated from liability because of the negligence of an adult stepson which occurred while the stepson was using the father's car without permission on the return from a trip across the river to bring his [the stepson's] wife home from a visit there.

*St. Andrassy v. Mooney*, 262 N. Y. 368, 186 N. E. 867, holds that, where it is shown that at the time of the accident the car was operated without the owner's permission by a chauffeur the owner should not be held liable for the chauffeur's negligence.

In *Otero v. Soto*, 34 Ariz. 87, 267 P. 947, it is held that the use of an auto truck by an employee on Sunday, for a pleasure trip, would not render the owner liable for the employee's negligence.

It will thus be seen that none of the cases so cited in support of defendants' first assignment of error presents the factual situation shown in the case at bar.

■ A difference of opinion might result in considering the facts of the instant case as to whether, at the time of the accident, Mr. Homann was acting in furtherance of his codefendants' business; but certainly it cannot be said that it is conclusively shown that he was not, nor do we think that the record is barren of substantial testimony in support of plaintiff's contention that then defendant Homann was acting as the employee and agent of defendants Jarman within the scope of his duties as such.

In this state of the record, error was not committed in denying and overruling defendants' motion for a directed verdict in favor of defendants Jarman.

The judgment of the circuit court is affirmed.